UNITED STATES DISTRICT COURT

MIDDLE DISTRICT OF LOUISIANA

LORI BRUNO-PONTHIER

                                CIVIL ACTION

VERSUS

                                NUMBER 06-31-FJP-CN

UNITED PARCEL SERVICE

## RULING

    This matter is before the Court on the defendant's motion for summary judgment.[1]  Plaintiff has filed an opposition to the motion, and defendant subsequently filed a reply to the opposition.[2]  For reasons which follow, defendant's motion for summary judgment is granted in part and denied in part.[3]  Summary judgment shall be granted dismissing all federal claims with prejudice.  The Court declines to exercise subject matter jurisdiction over the state law claims under 28 U.S.C. § 1367, and the state law claims are dismissed without prejudice.  Thus, defendant's motion for summary judgment as to these state law claims is denied without prejudice as moot.

## I.  Procedural and Factual Background

    Plaintiff, Lori Bruno-Ponthier ("Bruno-Ponthier"), has filed

---

[1] Rec. Doc. No. 33.

[2] Rec. Doc. Nos. 40 & 47.

[3] The Court has considered all contentions of the parties whether specifically discussed in this opinion or not.

this suit against the defendant, United Parcel Service ("UPS"), alleging various state and federal claims for sexual harassment and retaliation under Title VII,[4] the Louisiana Whistleblower Statute,[5] and the Louisiana Employment Discrimination Law.[6]

Plaintiff began employment with UPS in March 2003.[7]  She alleges that from the time she began working at UPS she was subjected to unwanted sexual harassment from her co-workers.  In May 2003, the plaintiff orally complained about the harassment to her supervisor, Terri Burch ("Burch").  In response to the plaintiff's oral complaint, defendant held meetings to remind all employees of the company's sexual harassment policy.  Plaintiff claims that the sexual harassment did not cease after these meetings, but she failed to alert UPS management of the continued

---

[4] 42 U.S.C. § 2000(e), *et seq.*

[5] La. R.S. 23:967.

[6] La. R.S. 23:301, *et seq.*

[7] The Court must note that the plaintiff's memorandum in opposition to the defendant's motion contains several inaccuracies regarding the facts of this case, particularly the dates on which certain actions were taken.  The Court hopes these inaccuracies were typographical errors since they refer to important issues and critical dates.  Plaintiff's memorandum states that her second complaint, which was in the form of a written statement to Jennifer Barnes-Taylor occurred on July 27, 2005, but the statement itself is dated July 27, 2004.  *See* Rec. Doc. No. 44, page 11.  Later the plaintiff states: "Mrs. Ponthier's written complaint was August 27, 2004."  *Id.* at 31.  However, the correct date is July 27, 2004.  Plaintiff also states: "in August, 2003 - just one month after starting her job at UPS...."  *See* Rec. Doc. No. 44, page 9.  It is undisputed that the plaintiff began her employment with UPS in March 2003.

harassment until over a year later when she filed a written complaint dated July 27, 2004, to Jennifer Barnes-Taylor ("Barnes-Taylor"), a UPS manager.  The complaint identified Derwin Antoine ("Antoine") as the main perpetrator of the harassment.  Barnes-Taylor responded by forwarding the plaintiff's complaint to Human Resources.  Terri Trammell ("Trammell") of Human Resources conducted an investigation of plaintiff's allegations, which also included meetings with Antoine and other UPS employees.  Trammell's investigation concluded that plaintiff's claims were without merit. Nevertheless, Trammell directed Barnes-Taylor to meet with Antoine, review the Personal Conduct and Anti-Harassment Policy with him, have him sign it, and instruct Antoine to stay away from plaintiff. It is clear that no further sexual harassment occurred after plaintiff's second complaint of July 27, 2004.  However, plaintiff mistakenly believed that Antoine had been terminated as a result of her second complaint.  When Antoine returned to work on September 29, 2004, plaintiff immediately walked off her job in the middle of her shift with no intention of returning.  Because plaintiff left her job mid-shift, UPS issued a termination letter on September 30, 2004, for "just cause - job abandonment."

## II.  Law and Analysis

### A.  Summary Judgment Standard

Summary judgment should be granted if the record, taken as a whole, "together with the affidavits, if any, show that there is no

genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law."[8]  The Supreme Court has interpreted the plain language of Rule 56(c) to mandate "the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."[9]  A party moving for summary judgment "must 'demonstrate the absence of a genuine issue of material fact,' but need not negate the elements of the nonmovant's case."[10]  If the moving party "fails to meet this initial burden, the motion must be denied, regardless of the nonmovant's response."[11]

If the moving party meets this burden, Rule 56(c) requires the nonmovant to go beyond the pleadings and show by affidavits, depositions, answers to interrogatories, admissions on file, or other admissible evidence that specific facts exist over which

---

[8] Fed. R. Civ. P. 56(c); *New York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 338 (5th Cir. 1996); *Rogers v. Int'l Marine Terminals, Inc.*, 87 F.3d 755, 758 (5th Cir. 1996).

[9] *Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986).  See also *Gunaca v. Texas*, 65 F.3d 467, 469 (5th Cir. 1995).

[10] *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (quoting *Celotex*, 477 U.S. at 323-25, 106 S.Ct. at 2552).

[11] *Id.* at 1075.

there is a genuine issue for trial.[12]   The nonmovant's burden may not be satisfied by conclusory allegations, unsubstantiated assertions, metaphysical doubt as to the facts, or a scintilla of evidence.[13]   Factual controversies are to be resolved in favor of the nonmovant, "but only when there is an actual controversy, that is, when both parties have submitted evidence of contradictory facts."[14]   The Court will not, "in the absence of any proof, assume that the nonmoving party could or would prove the necessary facts."[15]   Unless there is sufficient evidence for a jury to return a verdict in the nonmovant's favor, there is no genuine issue for trial.[16]

In order to determine whether or not summary judgment should be granted, an examination of the substantive law is essential. Substantive law will identify which facts are material in that "[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of

---

[12] *Wallace v. Texas Tech Univ.*, 80 F.3d 1042, 1046-47 (5th Cir. 1996).

[13] *Little*, 37 F.3d at 1075;  *Wallace*, 80 F.3d at 1047.

[14] *Wallace*, 80 F.3d at 1048 (quoting *Little*, 37 F.3d at 1075). *See also S.W.S. Erectors, Inc. v. Infax, Inc.*, 72 F.3d 489, 494 (5th Cir. 1996).

[15] *McCallum Highlands v. Washington Capital Dus, Inc.*, 66 F.3d 89, 92 (5th Cir. 1995), *as revised on denial of rehearing*, 70 F.3d 26 (5th Cir. 1995).

[16] *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 249-51, 106 S.Ct. 2505, 2511, 91 L.Ed.2d 202 (1986).

summary judgment."[17]  The Court now turns to a discussion of each of plaintiff's federal claims.

**B.   Sexual Harassment Claim**

In *Woods v. Delta Beverage Group, Inc.*, the Fifth Circuit Court of Appeals stated that "a plaintiff may establish a Title VII violation by proving that sex discrimination has created a hostile or abusive work environment."[18]  In order to prevail on her hostile work environment claim, the plaintiff must prove the following elements: (1) she belongs to a protected class, (2) she was subjected to unwelcome sexual harassment, (3) the harassment complained of was based on sex, (4) the harassment affected a term, condition, or privilege of her employment, and (5) her employer knew or should have known of the harassment and failed to take prompt remedial action.[19]  In this case, plaintiff has failed to present sufficient summary judgment evidence with respect to the fourth and fifth elements to create a material issue of fact in dispute which would require the Court to deny defendant's motion for summary judgment.

**1.   Whether Harassment Affected a Term, Condition, or Privilege of Employment**

In *Meritor Savings Bank v. Vinson*, the United States Supreme

---

[17] *Id.* at 248, 106 S.Ct. at 2510.

[18] 274 F.3d 295, 298 (5th Cir. 2001).

[19] *Hockman v. Westward Communications, LLC*, 407 F.3d 317, 325 (5th Cir. 2004).

Court held that in order for sexual harassment to affect a term, condition, or privilege of employment, such harassment must be sufficiently severe or pervasive so as to alter the conditions of the victim's employment and create an abusive work environment.[20] Whether an environment is hostile or abusive is determined by looking at all of the facts and circumstances of the case, including the frequency of the discriminatory conduct, its severity, whether it is physically threatening or humiliating, or merely offensive, whether it unreasonably interferes with an employee's work performance, and whether the complained-of conduct undermines the plaintiff's workplace competence.[21]

The Court finds that except for her own self-serving deposition testimony, plaintiff has failed to present any evidence to support her hostile work environment claim with regard to the severe or pervasive requirements or to create a material issue fact in dispute. The record reveals that plaintiff made complaints on two occasions to UPS regarding sexual harassment.[22] In these complaints, plaintiff alleges that Emile Douzier made sexual comments to her. She also alleges that Derwin Antoine sexually

---

[20] 477 U.S. 57, 67, 106 S.Ct. 2399, 2405, 91 L.Ed.2d 49 (1986).

[21] *Hockman*, 407 F.3d at 325-26.

[22] The plaintiff makes allegations regarding the pervasiveness of the harassment, but she never made specific complaints to UPS regarding any individuals other than Derwin Antoine and Emile Douzier.

harassed her by following her to a gas station once after work, asking her out three or four times, staring at her, timing his entry into the building from the parking lot so he could walk in with her, appearing unnecessarily in her work area, and making one overtly sexual comment.

In addition to the plaintiff's failure to present summary judgment type evidence, several other factors indicate that the alleged sexual harassment was neither severe nor pervasive under the facts of this case.  As for severity, the plaintiff's own deposition testimony characterizes the entire incident as "minor."[23] Plaintiff's assertion that the harassment was severe is also called into doubt by the fact that she only made two complaints regarding sexual harassment during the approximately seventeen months she was employed with UPS.  While the plaintiff's attorney states that Bruno-Ponthier's complaints were "constant," the plaintiff's deposition testimony suggests otherwise.[24]  Plaintiff testified in her deposition that she "hinted around" in hopes that others would report the alleged sexual harassment.[25] The Court finds that plaintiff has failed to meet the severe requirement under the facts of this case.  As for pervasiveness, the plaintiff has produced no

---

[23] Deposition of Bruno-Ponthier, Rec. Doc. No. 33, Exhibit Parts 1-5, page 228.

[24] See Plaintiff's Opposition, Rec. Doc. No. 44, page 23.

[25] Deposition of Bruno-Ponthier, pages 93-98.

evidence to corroborate her testimony that the harassment was continuous over the entire period of her employment with UPS. The record reveals that only two complaints were filed and UPS immediately took steps to call meetings to remind all employees of the sexual harassment policy, investigate the matter, and require every employee to specifically read and sign the policy. No other facts regarding sexual harassment were ever brought to the attention of UPS by the plaintiff or any other employee. It is also important to note that plaintiff did not produce affidavits or testimony from co-workers who may have witnessed the alleged harassment. The testimony of co-workers only states that they witnessed the plaintiff being upset at work, but no witness testified that they actually observed or heard the harassment that the plaintiff alleges.[26]

The Fifth Circuit has held that even more egregious conduct than that alleged by plaintiff in this case did not affect a term, condition, or privilege of employment. In *Hockman*, the plaintiff alleged that in the year and a half she was employed, she was

---

[26] Dewey Moorman, who worked alongside plaintiff, stated: "The only thing I can truly say is how Lori [plaintiff] was feeling. I knew she was upset. I can't say what he did to her. Those were experiences she told me. The only things I actually witnessed, she used to be upset." Deposition of Moorman, Rec. Doc. No. 40, Exhibit B, Part 1, page 32. Steven Lewis stated: "Like I said, I wasn't right next to them, I don't know what was said. If you want that kind of statement, it would be better to ask somebody that actually worked with her...." Deposition of Lewis, Rec. Doc. No. 40, Exhibit E, Part 1, page 29.

harassed in the following ways:

> (1) [the harasser] once made a remark to Hockman about another employee's body, (2) [the harasser] once slapped her on the behind with a newspaper, (3) [the harasser] "grabbed or brushed" against Hockman's breasts and behind, (4) [the harasser] once held her cheeks and tried to kiss her, (5)[the harasser] asked Hockman to come to the office early so that they could be alone, and (6) [the harasser] once stood in the door of the bathroom while she was washing her hands.[27]

The Fifth Circuit in *Hockman* held: "As a matter of law, the conduct described by Hockman was not so severe and pervasive as to affect the terms, conditions, or privileges of her employment."[28]

## 2.   UPS Took Prompt Remedial Action

In order to prevail on her claim, plaintiff must prove that the defendant knew or should have known of the harassment and failed to take prompt remedial action.  Plaintiff bears the burden of showing that her employer failed to take effective action.[29]  As noted earlier, the evidence shows that plaintiff complained on two occasions regarding sexual harassment and after each complaint defendant took prompt remedial action.[30]  After plaintiff's first

---

[27] 407 F.3d at 328.

[28] *Id.* at 329.

[29] *Skidmore v. Precision Printing and Pkg., Inc.*, 188 F.3d 606, 616 (5th Cir. 1999).

[30] Plaintiff alleges that she also complained to supervisors Mike St. Pierre, Seneca Taylor, Steven Carter, and Greg Dinn regarding sexual harassment; however, plaintiff produces no evidence to support these allegations besides her own self-serving deposition testimony.  In addition, Greg Dinn submitted an affidavit stating that he was never a supervisor for UPS.  Rec.

complaint to Burch, defendant held meetings to reinforce awareness of UPS's sexual harassment policy, and to remind employees of prohibited conduct. Plaintiffs admits in her deposition that she was satisfied with defendant's response to her complaint because she "didn't want to be pinpointed."[31] Plaintiff now claims that the response was not sufficient because Antoine was not present at these meetings.[32] However, the Court must note that at the time of her first complaint plaintiff had not identified Antoine as the harasser because she did not know his name,[33] and plaintiff has failed to show that defendant had any actual knowledge or any other reason to know that Antoine was the source of the alleged harassment.

Plaintiff's second complaint did not occur until July 27, 2004, over one year after her first complaint.[34] The Court finds that this delay in reporting sexual harassment that plaintiff alleges was "constant" is unreasonable under the facts of this

---

Doc. No. 47, Exhibit A.

[31] Deposition of Bruno-Ponthier, page 93.

[32] *See* Plaintiff's Louisiana Commission on Human Rights Complaint Questionnaire, Rec. Doc. No. 33, Exhibit Part 6, pages 7-8.

[33] Deposition of Bruno-Ponthier, Page 119.

[34] Although the Complaint Questionnaire submitted by plaintiff to the Louisiana Commission on Human Rights states that her second complaint regarding sexual harassment came on September 29, 2004, the written complaint plaintiff refers to is dated July 27, 2004.

case.  It is clear that plaintiff has presented no evidence showing that defendant knew or should have known of any sexual harassment between the first and second complaint after it held sexual harassment awareness meetings in response to plaintiff's initial complaint.  The fact that fellow employees who worked closely with the plaintiff had little or no first-hand knowledge of the alleged harassment that plaintiff alleges further supports the Court's finding that UPS management did not know or have reason to know that such behavior was occurring.

After the July 27, 2004 complaint, UPS conducted an investigation into plaintiff's allegations and interviewed numerous employees.  After the investigation was concluded, UPS was unable to substantiate plaintiff's allegations of inappropriate behavior.[35] Between the time when plaintiff made the second complaint and when her employment with UPS ended, she admits the following: she was not harassed by Antoine in the parking lot; she did not make any further complaints regarding Antoine's actions; and Antoine did not speak to her again.[36]  According to the "Charging Party Sexual Harassment Questionnaire" completed and signed by the plaintiff on December 22, 2004, the alleged harassment ended on July 27, 2004, the date of her second complaint.[37]

---

[35] Deposition of Trammell, Rec. Doc. No. 33, Exhibit Part 7, page 30.

[36] Deposition of Bruno-Ponthier, pages 186, 199, 218.

[37] Rec. Doc. No. 33, Exhibit Part 6, page 12.

It is clear from the evidence presented that the defendant took prompt action in response to plaintiff's complaints.[38]   If plaintiff was not satisfied with that response, she did not make this fact known to UPS management.   Plaintiff signed the sexual harassment policy which required her to report any incidents of prohibited behavior.[39]   Plaintiff's failure to report the alleged incidents cannot now be used to hold UPS liable for unreported behavior.[40]   While plaintiff now argues she did not report this sexual harassment because she was "intimidated" by Burch, her supervisor,[41] plaintiff's deposition testimony contradicts this assertion.   In her deposition, plaintiff stated that Burch was "receptive" to her complaint.[42]   There being no genuine issues of

---

[38] See *Robinson v. Blue Cross and Blue Shield of Louisiana*, 75 Fed. Appx. 304 (5th Cir. 2003) (holding that plaintiff had no valid claim for sexual harassment because, among other things, defendant took remedial action).

[39] Plaintiff alleges that the policy was not sufficient, but this issue is largely irrelevant.   The presence or absence of a sexual harassment policy is relevant to Ellerth/Faragher affirmative defense, but that defense is inapplicable to this case because its only effect is to shield an employer from vicarious liability for sexual harassment by a supervisor. *Caiano v. AT&T*, 213 F.3d 278 (5th Cir. 2000).   The fact remains that there is a document labeled "Professional Conduct And Anti-Harassment Policy" that plaintiff admits she signed and was dated March 11, 2003, which made plaintiff aware of UPS' policy, including her duty to report sexual harassment.

[40] *Woods*, 274 F.3d at 299 (an employer "cannot be held liable for conduct of which it had no knowledge").

[41] Deposition of Lori Bruno-Ponthier, page 96.

[42] *Id.* at page 97.

material fact in dispute, the Court find that defendant's motion for summary judgment on the sexual harassment claim should be granted as a matter of law under the facts of this case.

### C. Retaliation Claim

Plaintiff also alleges that various actions by the defendant constitute unlawful retaliation.  While plaintiff claims that there is direct evidence of retaliatory intent, the evidence presented to the Court fails to support this claim.  The Fifth Circuit in a case relied on by plaintiff set forth the factors regarding what might constitute direct evidence: "In the context of Title VII, direct evidence includes any *statement or written document* showing a discriminatory motive on its face."[43]  However, plaintiff failed to present a statement or written document showing a discriminatory motive, even though she argues that there is direct evidence of retaliation in this case.  Plaintiff's reliance on *Fierros* is misplaced because that case involved a statement admitting retaliatory motive, and the plaintiff has produced no such evidence in this case.  Plaintiff also asserts that her termination violated the union contract.  However, not only did plaintiff fail to assert a proper claim under the appropriate federal labor statute, but she failed to present any evidence of such a violation.[44]

---

[43] *Fierros v. Texas Dept. Of Health*, 274 F.3d 187, 195 (5th Cir. 2001); Plaintiff's Opposition, page 30 (emphasis added).

[44] In fact, deposition testimony of UPS management shows that the 48-hour notice provision that plaintiff refers to was not applicable to her termination and there was no violation of the

When there is no direct evidence of retaliation, as is the case here, retaliation claims are analyzed under the *McDonnell Douglas* burden-shifting framework.[45]  To make out a *prima facie* claim of retaliation, the plaintiff must present evidence of three things: (1) she engaged in protected conduct, (2) she was thereafter subjected to an adverse employment action, and (3) the adverse employment action was taken in response to her protected conduct.[46]  If a *prima facie* case is proven, the burden shifts to the defendant to articulate a legitimate, non-retaliatory reason for the adverse employment action.[47]  If the defendant meets this burden, then the plaintiff must show that the proffered rationale was pretextual.[48]

The Court will address each allegation of unlawful retaliation.

### 1.   Transfer to a less desirable position

Assuming that a temporary transfer to a different job would constitute an adverse employment action, plaintiff has nevertheless

---

union contract.   Plaintiff presents no evidence to refute this testimony.  Deposition of Burch, Rec. Doc. No. 33, Exhibit Part 9, pages 44-46; Deposition of Barnes-Taylor, Rec. Doc. No. 33, Exhibit Part 7, pages 62-64; Deposition of Phil, Rec. Doc. No. 33, Exhibit Part 9, pages 16, 52.

[45] *Hockman,* 407 F.3d at 330.

[46] *Id.*

[47] *Id.*

[48] *Id.*

failed to present evidence of a causal connection between the protected activity and the transfer.  In fact, an employee of UPS testified that people are often moved between jobs.[49]  Even if the plaintiff was able to show a *prima facie* case, the defendant has shown a legitimate, non-retaliatory reason for her transfer. According to the plaintiff's own deposition testimony, she was only transferred to this "less desirable" position for two or three days because Antoine, who normally worked in this position, was unable to perform the functions of that job due to an injured hand.[50] Plaintiff has failed to show that this reason was a pretext for illegal conduct on the part of UPS.

### 2.  "Spotlighted" for reporting sexual harassment

Plaintiff claims that she was "clearly made an example of – she was 'spotlighted' for reporting sexual harassment to Burch."[51] However, plaintiff's own deposition testimony rebuts this claim. In her deposition plaintiff testified about her reaction to the meetings on sexual harassment held in response to her initial complaint to Burch, stating: "I was glad – nobody really understood what they were talking about.  It wasn't really specific like someone's having a problem in the company, and maybe y'all just

---

[49] Deposition of Douzier, Rec. Doc. No. 40, Exhibit F, page 62.

[50] Deposition of Bruno-Ponthier, pages 207, 211.

[51] Plaintiff's Opposition, page 27.

need to watch what you are saying or just keep it to yourself."[52] According to the plaintiff's testimony, she was not "spotlighted." In accordance with plaintiff's request, the meetings did not specifically address the plaintiff or her situation, but rather sexual harassment in general. The plaintiff cannot now contradict her own sworn testimony to support a retaliation claim.

### 3.   Work scrutinized by supervisor

Plaintiff has not presented sufficient summary judgment evidence to show that scrutiny by a supervisor constitutes unlawful retaliation. Plaintiff alleges that after her second complaint, Barnes-Taylor came into her work area and watched her work for two or three days, which plaintiff claims constitutes an adverse employment action.[53] Plaintiff admits that nothing ever resulted from Barnes-Taylor monitoring her work.[54] The Court finds that even under the *Burlington* standard,[55] this action does not rise to the level of an actionable adverse employment action to support a claim of retaliation under the facts of this case.

---

[52] Deposition of Bruno-Ponthier, page 92.

[53] *Id.* at 201.

[54] *Id.* at 202.

[55] *Burlington Northern and Santa Fe Ry. Co. V. White,* 126 S.Ct. 2405, 165 L.Ed.2d 345 (2006)(overturning Fifth Circuit precedent which held that retaliation claims were limited to "ultimate employment decisions." *Burlington* held that the correct inquiry is whether "a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a charge of discrimination.")

### 4.   Threats made by supervisor

Plaintiff alleges that Barnes-Taylor "directly threatened [her] when she tried to report on-going sexual harassment and, at least, find out what UPS was doing with respect to her complaint...."[56]   This assertion is without merit for several reasons.   First, plaintiff admits that she had not approached Barnes-Taylor for the purpose of reporting harassment.[57]   Second, plaintiff does not cite to any evidence of this alleged incident. In fact, plaintiff's testimony suggests that it was actually Barnes-Taylor who felt threatened.[58]   Plaintiff even admits that she was "angry" every time she saw Barnes-Taylor, and that she took a "very stern" tone with Barnes-Taylor.[59]   Plaintiff has simply failed to present any summary judgment evidence to create a material issue of fact in dispute, and cannot rely on mere conclusory allegations to survive summary judgment.

### 5.   March 18, 2004 Write-Up

Plaintiff also complains of a March 18, 2004 write-up. Plaintiff's own testimony establishes that this action was not retaliatory, but was a response to her absenteeism.   Plaintiff admits that she did not have a problem with the write-up for her

---

[56] Plaintiff's Opposition, page 28.

[57] Deposition of Bruno-Ponthier, pages 199-200.

[58] *Id.* at 215.

[59] *Id.* at 181.

poor attendance and that she was never disciplined or reprimanded because of her attendance.[60]   In addition, this alleged act of retaliation occurred approximately ten months after plaintiff's first complaint regarding sexual harassment and prior to the second complaint.   This delay refutes a causal connection between the March 18, 2004 write-up and her sexual harassment claim.

### D.   Constructive Discharge

In the absence of an adverse employment action, plaintiff may prove that she was constructively discharged in retaliation for her Title VII complaints.   Constructive discharge requires proof that working conditions were so intolerable that a reasonable person in the plaintiff's position would feel compelled to resign.[61]   An employee's obligation of reasonableness requires that she not jump to conclusions and not assume the worst.[62]   The Fifth Circuit has recognized a number of non-exclusive factors to consider in determining whether a reasonable employee would feel compelled to resign: (1) demotion; (2) reduction in salary; (3) reduction in job responsibilities; (4) reassignment to menial or degrading work; (5) reassignment to work under a younger supervisor; (6) badgering, harassment, or humiliation by the employer calculated to encourage

---

[60] *Id.* at 260-261.

[61] *Thompson v. Naphcare, Inc.,* 117 Fed.Appx. 317, 324 (5th Cir. 2004), citing *Webb v. Cardiothoracic Surgery Assoc. of North Tex.,* 139 F.3d 532, 539 (5th Cir. 1998).

[62] *Id.,* citing *Dornhecker v. Malibu Grand Prix Corp.,* 828 F.2d 307, 310 (5th Cir. 1987).

Doc#44770                              19

the employee's resignation; and (7) offers of continued employment on terms less favorable than the employee's former status.[63] Plaintiff has failed to offer adequate summary judgment evidence with respect to any of these factors to establish constructive discharge or a material issue of fact with regard to this claim.

The undisputed facts are that plaintiff mistakenly believed Antoine had been terminated from his employment with UPS as a result of her complaint, and when she saw him return to work she immediately walked off the job with no intention to return. Plaintiff also admitted that she would not have been satisfied with anything less than termination of Antoine. Plaintiff's position is not supported by the facts of this case. The record shows that the harassment by Antoine stopped after she made it known to UPS by way of her second and final complaint that he was the harasser. Plaintiff's action in quitting after the harassment had stopped was not caused by the defendant but was her own personal decision. Thus, the Court finds that there was no constructive discharge.

Even if plaintiff could show constructive discharge, she has not shown a causal connection between the discharge and the protected activity. The undisputed testimony of Douglas Duhon, the supervisor who confirmed plaintiff's termination, establishes that he had no knowledge of plaintiff's prior complaints regarding

---

[63] *Id.*, citing *Barrow v. New Orleans S.S. Ass'n.*, 10 F.3d 292, 297 (5th Cir. 1994).

sexual harassment when he issued the termination letter.[64]   It is clear that the termination letter was based on plaintiff's absenteeism from her job and for leaving her shift before it was completed.

## III. Conclusion

For the reasons set forth above, the Court finds that plaintiff has failed to present sufficient summary judgment evidence to create genuine issues of material fact to defeat defendant's motion for summary judgment with respect to the claims based on federal law.   Therefore, the defendant's motion for summary judgment on the federal claims shall be granted. Plaintiff's claims based on federal law shall be dismissed with prejudice.   The Court refuses to exercise jurisdiction over the state law claims under 28 U.S.C. § 1367.   Therefore, the claims based on state law shall be dismissed without prejudice as moot and defendant's motion for summary judgment on the state law claims shall be denied as moot without prejudice.

Judgment shall be entered accordingly.

Baton Rouge, Louisiana, December 3, 2007.

FRANK J. POLOZOLA
MIDDLE DISTRICT OF LOUISIANA

---

[64] Deposition of Duhon, Rec. Doc. No. 33, Exhibit Part 8, pages 27, 31.

Doc#44770                                          21